IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ELITE MITIGATION SERVICES, LLC
a/a/o Greta Lawrence,

      Plaintiff,

vs.                         CASE NO.: 5:19-CV-381-TKW-MJF

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS AND TO COMPEL BETTER RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW, Plaintiff ELITE MITIGATION SERVICE, LLC a/a/o Greta Lawrence ("Plaintiff"), by and through the undersigned counsel, pursuant to the Federal Rule of Civil Procedure 37 and the Northern District of Florida Local Rule 7.1(b), hereby files this Motion to Overrule Objections and to Compel Better Responses to Plaintiff's First Set of Interrogatories, and states the following in support thereof:

### I.   Factual Background & Procedural History

This case involves two separate and distinct homeowner's insurance disputes following Hurricane Michael. *See,* DE 1-1 and 1-2, generally. Defendant is an insurance company and issued a homeowner's insurance policy to Greta Lawrence

(hereinafter "Insured") which provided insurance coverage to two separate structures at Insured's property located at 5904 East Hwy 98, Panama City, Florida 32404 (hereinafter "Insured Property") for, *inter alia*, hurricane damage. *See,* DE 1-1 at p. 6; DE 1-2 at p. 6. The property consists of two separate and distinct units: "Unit B" (a store) and "Unit C" (a dwelling). *See,* DE 1-1 at p. 14; DE 1-2 at p. 14. As such, the insurance policy in question is subdivided into separate and distinct coverages for each Unit. *See,* Insurance Policy attached hereto as "Exhibit A" at p. 7.

On or about October 10, 2018, both Unit B and Unit C of the Insured Property were damaged by Hurricane Michael. *See,* DE 1-1 at p. 6; DE 1-2 at p. 6. Thereafter, Insured entered into two separate contracts with Plaintiff, whereby Insured assigned to Plaintiff certain rights and benefits under the insurance policy for each Unit. *See,* DE 1-1 at pp. 6 and 14; DE 1-2 at pp. 6 and 14. Plaintiff then provided two separate and distinct sets of necessary emergency restoration and construction services at each of the two Units in question. *Id.* These two separate and distinct services resulted in two separate and distinct invoices – one invoice for Unit B in the amount of $55,314.29, and a second invoice for Unit C in the amount of $26,207.13. *See,* DE 1-1 at pp. 14 – 27; DE 1-2 at pp. 14 – 30.

Subsequent to providing services at both Unit B and Unit C, Plaintiff submitted its two invoices to Defendant, along with the two respective assignment

agreements for each Unit. *See,* DE 1-1 at pp. 6 and 14; DE 1-2 at pp. 6 and 14. After Defendant failed to pay Plaintiff in full for each invoice, Plaintiff commenced two separate lawsuits against Defendant in the Circuit Court in and for Bay County, Florida based upon Defendant's failure to pay the separate and distinct invoices for Plaintiff's services rendered at the two Units. *See,* DE 1-1 and 1-2, generally.

On July 12, 2019, Defendant filed a "Motion to Consolidate Cases" in the state court lawsuit Plaintiff had filed with respect to its invoice for Unit B, seeking to have that case consolidated into the lawsuit Plaintiff had filed with respect its invoice for Unit C. *See,* DE 1 – 4 at pp. 138 – 154. In its Motion, Defendant concedes that Plaintiff's claims are separate and distinct as they involve diverse services performed at the home and store Units, but argues, nevertheless, that judicial economy favors consolidation. *Id.* Plaintiff did not oppose Defendant's Motion and, on September 10, 2019, Bay County Circuit Court Judge John L. Fishel, II entered and Agreed Order consolidating the Unit B lawsuit into the Unit C lawsuit under Florida Rule of Civil Procedure 1.270(a). *See,* DE 1-3.

On October 8, 2019, Defendant filed a Notice of Removal, contending that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. *See,* DE 1, generally.

On or about October 24, 2019, Plaintiff propounded their First set of Interrogatories to Defendant. A true and correct copy of Plaintiff First Set of

Interrogatories is attached hereto as "Exhibit B". Defendant served Responses to Plaintiff's First Set of Interrogatories on December 20, 2019. Defendant's Responses are attached hereto as "Exhibit C".

Pursuant to Local Rule 7.1(b), Plaintiff made several attempts to resolve disputes that have arisen over Defendant's Responses to Plaintiff's Interrogatories, yet Defendant has refused to provide responses compliant with the Federal Rules of Civil Procedure and this Court's Local Rules and precedent. For the reasons that follow, the Court should compel Defendant to provide better responses to Plaintiff's First Set of Interrogatories.

## II.   <u>Legal Standard.</u>

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The term "relevant" in this definition is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005)(quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)). Whether a matter is "proportional to the needs of the case" is to be determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26.

"The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed

issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Grams v. Am. Med. Instruments Holdings Long Term Disability Plan*, 3:08-CV-1060-J-12MCR, 2009 WL 2926844, at *1 (M.D. Fla. Sept. 14, 2009)(citing *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). "The United States Supreme Court has said that [the discovery provisions of the Federal Rules of Civil Procedure] are to be broadly and liberally construed." *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1](citing *Hickman v. Taylor*, 329 U.S. 495, 505 (1947)). As such, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman*, 329 U.S. at 507.

The Advisory Committee Notes to Rule 26 make clear that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment, Fed. R. Civ. P. 26. This Court's Discovery Practices expressly provide that "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2001) at 1.

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure are committed to the sound discretion of the trial court. *See*, *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir.1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *Id.*

## III.   Arguments.

### a.  The Interrogatories at Issue.

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

Pursuant to Local Rule 7.1 (b), the following is a quotation in full of each discovery request to which this Motion is addressed followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party or the answer or response which is asserted to be insufficient, immediately followed by a statement of the reason this Motion should be granted.

    i.   <u>Plaintiff's Interrogatory Number 1 through17</u>.

Defendant has failed to provide verified Interrogatory Responses under oath as required by Rule 33(b)(3) of the Federal Rules of Civil Procedure. Thus, the Court should overrule and/or waive Defendant's objections and compel better responses to Plaintiff's First Set of Interrogatories.

    ii.   <u>Plaintiff's Interrogatory Number 4</u>.

**PLAINTIFF'S INTERROGATORY NO. 4: Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, or by Assignor, concerning any issue in this lawsuit?  If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.**

**DEFENDANT'S ANSWER: Westchester objects to interrogatory number 4 because it is overly broad and vague. Without waiving these objections, and specifically subject to the objections, there are no recorded statements, transcripts or other recordings of the substance of statements regarding this lawsuit. Westchester believes that the following individuals may have knowledge of the facts at issue in this matter:**

**Dan Hogan**
**Public Adjuster retained by insured**
**Dan Hogan, PA**

**3526 E. FM 528**
**Suite 206**
**Friendswood, TX 77546**

**Leon Spears**
**National General Adjuster**
**Sedgwick**
**438 Katherine Drive, Suite A**
**Flowood, MS 39232**

**Scott Wiggins**
**Employee of plaintiff**

**Caleb (Last name unknow)**
**Employee of plaintiff**

**Unknown employee of plaintiff who signed the purported assignment of**
**benefits**

**Hunter (Last name unknown)**
**Employee of plaintiff**

**Cory Chandler**
**Blackwell Insurance**
**PO Box 520**
**Panama City, Florida 32402**

      Initially, Defendant's objections are impermissibly boilerplate in nature. *See,*
*e.g., Mendez v. Land Inv'rs, Corp.*, 2:12-CV-158-FTM-29, 2012 WL 6012906, at *1
(M.D. Fla. Dec. 3, 2012)("Parties may not assert conclusory, boilerplate objections
that fail to explain the precise grounds that make the request objectionable.") *See,*
*e.g., Polycarpe v. Seterus, Inc.*, 616CV1606ORL37TBS, 2017 WL 2257571, at *3
(M.D. Fla. May 23, 2017)("Defendant's objections based upon Plaintiff's failure to
define these [ordinary] words appears to be nothing more than a disingenuous
attempt to game the discovery."), *Martin v. Zale Delaware, Inc.*, 8:08-CV-47-T-
27EAJ, 2008 WL 5255555, at *1 (M.D. Fla. Dec. 15, 2008), *Fegadel v. Ocwen Loan*

*Servicing, LLC*, 8:15-CV-2228-T-17JSS, 2016 WL 6893971, at *4 (M.D. Fla. Nov. 23, 2016). Additionally, the information requested falls squarely within the scope of permissible discovery. *See, e.g., Welch v. GEICO Gen. Ins. Co.*, 8:16-CV-1460-T-36TBM, 2017 WL 3701241, at *2 (M.D. Fla. Jan. 27, 2017).

Moreover, it is well settled that in the Eleventh Circuit that "whenever an answer accompanies an objection, the objection is deemed waived and the answer, if responsive, stands." *Tardif v. People for the Ethical Treatment of Animals,* NO. 2:09–cv–537–FtM–29SPC, 2011 WL 1627165, at *2 (M.D.Fla. Apr.29, 2011); *see also Pepperwood of Naples Condo. Ass'n v. Nationwide Mut. Fire Ins. Co.,* No. 2:10–cv–753–FtM–36SPC, 2011 WL 4382104, at *4–5 (M.D.Fla. Sept. 20, 2011); *Mann v. Island Resorts Dev., Inc.,* No. 3:08cv297/RS/EMT, 2009 WL 6409113, at *3 (N.D.Fla. Feb.21, 2009). As this Court has noted:

> [A]nswering subject to an objection lacks any rational basis. There is either a sustainable objection to a question or request or there is not. Other courts have remarked that all a mixed response really says is the counsel does not know for sure whether the objection is sustainable, that it probably is not, but thinks it is wise to cover all bets anyway[.]

*Chemoil Corp. v. MSA V*, 2:12-CV-472-FTM-99, 2013 WL 944949, at *2 (M.D. Fla. Mar. 12, 2013), *aff'd*, 2:12-CV-472-FTM-38, 2013 WL 3070853 (M.D. Fla. June 17, 2013).

In the instant case, the interrogatory response provided by Defendant has been provided "subject to and without waiving" a preceding objection. Pursuant to the authorities cited *supra*, Defendant has waived these objections. However, in light of Defendant's erroneous assertion that its objections have not been waived and Defendant's qualifying language stating that its response is being provided "subject to" the foregoing objections, it is unclear whether Defendant is withholding information responsive to Plaintiff's requests. As was explained in by the Court in

*Consumer Elecs. Ass'n v. Compras and Buys Mag., Inc.*, this is an inevitable consequence of such improper discovery tactics:

> Such an objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court. Further, such practice leaves the requesting Party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered.

*Id.*, 08-21085-CIV, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008).

Here, it remains unclear whether Defendant has responded in full to the foregoing interrogatory or whether Defendant is withholding information based upon its improper objections. As such, Plaintiff seeks an order from this Court deeming Defendant's objections waived and compelling Defendant to respond to this interrogatory without objection.

Additionally, Federal Rule of Civil Procedure 33(d) permits the production of documents in lieu of a written response to an interrogatory in the event that "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party". "A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also 'must specify where in the records the answers [can] be found.'" *Pepperwood of Naples Condo. Ass'n, Inc.*, 2011 WL 4382104 at *6. Federal Rule of Civil Procedure 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

Here, Defendant refers generally to numerous persons, but fails to specify where in the records the information responsive to Plaintiff's request is located. As

such, Defendant's response is improper, and the Court should deem the Defendant's objections waived and require Defendant to provide a compliant response to Plaintiff's request.[2]

   iii.   <u>Plaintiff's Interrogatory Number 16</u>.

**PLAINTIFF'S INTERROGATORY NO. 16: Identify (defined above) any persons or companies not employed directly by your company who provided you with any services, analyses, outside adjusting, or otherwise rendered opinions to you in the adjusting of the Plaintiff's claim, please identify:**

**a.      The name of the individual who hired the third party on behalf of your company.**

**b.      The date and nature of the services provided by the third party.**

**c.      Each case in which the third party has been retained by you for any purpose during the past three years.**

**d.      The amount of money that the third party has been paid by you during the past three years.**

**e.      Please state the taxpayer identification numbers for both you and the third party.**

**DEFENDANT'S ANSWER: Westchester objects to subparts (c), (d) and (e) of interrogatory number 16 because plaintiff seeks to discover information that is not relevant to the subject matter of this action, is outside the scope of the action and has no relation to the litigation. A party wishing to utilize the discovery rules must show that the information desired to be disclosed is relevant to the proceeding. Further, Westchester objects to subparts (c), (d) and (e) of**

---

[2] The documents produced by Defendant have been designated as "confidential", and as such Plaintiff has not filed the documents with the Court in support of this Motion. As Plaintiff is confident that the Court will agree these documents are anything but self-explanatory, Plaintiff stands ready to submit the documents to the Court for an in camera review.

**interrogatory number 16 because it seeks information that constitutes or contains trade secrets, competitively sensitive information, or material that is confidential, proprietary, or that is properly subject to a protective order. Subject to these objections, and without waiving these objections, Westchester responds to subparts (a) and (b) of interrogatory 16 as follows:**

**Sedgwick Claims Management Services, Inc. was retained on October 31, 2018, to investigate the insured's claim by Cynthia Vann. Loss Management Solutions was retained by Cynthia Vann in March 2019 to review the invoices submitted by plaintiff and to make inquires to plaintiff regarding the invoices.**

Here, again, Defendant has improperly asserted objections followed by and answer and failed to identify where in the documents referenced the information sought through this interrogatory can be found. Accordingly, Defendant's response is improper, and the Court should deem the Defendant's objections waived and require Defendant to provide a compliant response to Plaintiff's request.

Finally, Defendant has improperly asserted privilege objections, yet provided no privilege log. Pursuant to Federal Rule of Civil Procedure 26, Defendant must produce a privilege log "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim". *See, e.g., Fegadel v. Ocwen Loan Servicing, LLC*, 8:15-CV-2228-T-17JSS, 2016 WL 6893971, at *4 (M.D. Fla. Nov. 23, 2016)("Defendant shall serve a privilege log identifying any discovery it withholds

on the basis of a privilege."). Accordingly, the Court should overrule the Defendant's objections to this interrogatory and require Defendant to provide a complete response.

     iv.   <u>Plaintiff's Interrogatory Number 17</u>.

**PLAINTIFF'S INTERRROGATORY NO. 17: On what date did you anticipate litigation in the underlying insurance claim?**

**DEFENDANT'S ANSWER: Westchester objects to interrogatory number 17 because it requests a legal conclusion.**

Plaintiff's question does not call for a legal conclusion, rather it call for a factual conclusion well within the Defendant's personal knowledge. The Defendant is not only aware of the date the Insured filed the insurance claim, but is also well aware of the subsequent steps it took in acknowledgement of, and in response to, the Insured's claim. Thus, Defendant's objection is disingenuous and the Court should compel defendant to respond to this interrogatory without objection.

**b. Plaintiff's Request Attorney's Fees.**

Federal Rule of Civil Procedure 37(a)(5) provides that in the event a Motion to Compel Discovery is granted "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Court "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing

party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

In the instant case, the circumstances support the imposition of sanctions against Defendant in the form of attorney's fees incurred in bringing the instant Motion before the Court. Initially, Defendant's discovery tactics fly in the face of a plethora of authority from both the Eleventh Circuit and the Northern District of Florida, much of which was supplied to Defendant prior to bringing the instant Motion. Defendant was given ample opportunity to review the case law and provide proper responses yet choose not to do so. Moreover, the parties spent considerable time negotiating and obtaining a protective order, yet Defendant continues to assert confidentiality objections. *See, e.g., Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 470, 471 (M.D. Fla. 2008)(awarding attorney's fees incurred in bringing motion to compel where "the parties had negotiated a detailed confidentiality agreement designed to safeguard sensitive information"). Finally, the disingenuous nature of many of Defendant's responses is indicative of deliberate attempts to frustrate the discovery process. Accordingly, sanctions are appropriate.

### IV. Conclusion.

Pursuant to the foregoing authorities, and in light of the claims and defenses at issue, the Court should grant Plaintiff's Motion to Overrule Objections and to Compel Better Responses to Plaintiff's First Set of Interrogatories.

WHEREFORE, Plaintiff respectfully requests an Order from this Honorable Court: (i) Granting Plaintiff's First Motion to Overrule Objections and to Compel Better Responses to Plaintiff's First Set of Interrogatories; (ii) Deeming Defendant's Objections to Interrogatory Numbers 4 and 16(c)(d)(e) – 17 Waived and/or Overruled; (iii) Requiring Defendant to Provide Complete Responses to Interrogatory Numbers 4 and 16(c)(d)(e) – 17, Without Objection, and; (iv) Awarding Plaintiff's Attorney's Fees Incurred in Obtaining the Foregoing Relief.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I HEREBY CERTIFY that counsel for Plaintiff has conferred with counsel for Defendant in good faith with respect to the relief requested in this instant Motion and Defendant opposes the relief requested herein.

/s/ *Ali A. Kadir*
**ALI A. KADIR, ESQ.**
Florida Bar No.: 13582

## LOCAL RULE 7.1(F) CERTIFICATE

I HEREBY CERTIFY that the instant Motion and Memorandum contains 3,612 words.

/s/ *Ali A. Kadir*
**ALI A. KADIR, ESQ.**
Florida Bar No.: 13582

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 15, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Ali A. Kadir*
**ALI A. KADIR, ESQ.**
Florida Bar No.: 13582
**KUHN RASLAVICH, P.A.**

500 N. Maitland Ave., Suite 111
Maitland, FL 32751
Telephone: (407) 501 – 4833
Facsimile: (407)501 – 4856
Ali@theKRfirm.com
Counsel for Plaintiff

Insured's Name   Pier 98 Marina, Inc.

Policy # FSF13883324 001

UMR # _____

**(Lloyd's Policies Only)**

| Policy Dates From | 10/26/2017 | To | 10/26/2018 |

Surplus Lines Agents Name          Tiffany Short

Surplus Lines Agents Address       4601 Touchton Rd E, Building 400, Suite 4150 Jacksonville FL 32246

Surplus Lines Agents License #     P115047

Producing Agent's Name             JOHNSON W BLACKWELL JR - JOHNSON BLACKWELL, JR.

Producing Agent's Physical Address 205 W 7TH STREET PO BOX 520, Panama City,  FL  32402

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

**"SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."**

| | | | |
|---|---|---|---|
| Policy Premium | $6,635.00 | Policy Fee | $30.00 |
| Inspection Fee | $0.00 | Provider Fee | $0.00 |
| Tax | $333.25 | Service Fee | $6.67 |
| FHCF Assessment | $0.00 | Citizen's Assessment | $0.00 |
| EMPA Surcharge | $4.00 | | |

*Tiffany Short*
P115047

Surplus Lines Agent's Countersignature

| x | **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."** |

| x | **"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."** |

# *Policy Declarations*



**Westchester**
A Chubb Company

| | |
|---|---|
| Policy No.  FSF13883324 001 | Renewal of:  New |
| DBA: | |

## NAMED INSURED & MAILING ADDRESS

**Pier 98 Marina, Inc.**
**315 Blackshear Dr**

**Panama City**
**FL**
**32404**

## POLICY PERIOD

| | | |
|---|---|---|
| When Coverage Begins: | 10/26/2017 | 12:01 A. M. Local Time At Named Insured's Address |
| When Coverage Ends: | 10/26/2018 | 12:01 A. M. Local Time At Named Insured's Address |

## INSURING COMPANY

| | Producer's Name & Address: |
|---|---|
| **WestchesterSurplusLines** | **HULL & COMPANY INC**<br>**4601 Touchton RD. E.**<br>**Bldg 400, Ste 4150**<br>**JACKSONVILLE**<br>**FL**<br>**32246**<br>Producer No.:**IT7996** |

## ATTACHED FORMS

This policy is completed by the following: **BB-5W58a (03/08)** and forms and endorsements attached thereto.

## Authorization Information

Dated: 10/26/2017

_____
Authorized Representative

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

 © Chubb. 2016. All rights reserved.

# *Policy Declarations*

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT
APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

# CHUBB Westchester Binding
# Common Policy Declarations



| | |
|---|---|
| Policy Number: | FSF13883324 001 |
| Company Name: | Westchester Surplus Lines Insurance Company (A.M. Best Rating A++) |

| | | | |
|---|---|---|---|
| Named Insured & Mailing Address: | Pier 98 Marina, Inc. | Producer's Name & Address: | HULL & COMPANY INC\Bresch McCarthy |
| | 315 Blackshear Dr | | 4601 Touchton RD. E. Bldg 400, Ste 4150 |
| | Panama City FL 32404 | | JACKSONVILLE FL 32246 |
| | | Producer No.: | IT7996 |

**General Policy Information And Policy Period**

Form of Business:

When Coverage Begins: 10/26/2017

When Coverage Ends:   10/26/2018

Business Description:

12:01 A.M. Local Time at Named Insured's Address

12:01 A.M. Local Time at Named Insured's Address

**In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.**

The premium for this policy is indicated below next to the applicable Coverage Form(s). Premiums may be subject to adjustment.

*Coverage Form*

| | |
|---|---|
| Property | $6,635 |
| **Total Policy Term Premium:** | **$6,635** |

*Assessments, Fees, Surcharges, Taxes*

| | |
|---|---|
| Policy Fee | $0.00 |
| Inspection Fee | $0.00 |
| Other Fee | $0.00 |
| State Fee | $0.00 |
| **Total Assessments, Fees, Surcharges, Taxes:** | $0.00 |
| **Total Amount Due:** | $6,635.00 |

**Attached Forms Information**

**See Forms Schedule CPFS2**

*Tiffany Short*
P115047

Date Issued:  10/26/2017

# CHUBB Westchester Binding
# Common Policy Declarations



**These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.**

© Chubb. 2016. All rights reserved.

# *Forms Schedule*

**Company:** Westchester Surplus Lines Insurance Company
**SYM:** FS        Policy ID: FSF13883324 001

**Policy Period** | When Coverage Begins: | 10/26/2017 | 12:01 A.M. Local Time At Named Insured's Address
When Coverage Ends: | 10/26/2018 | 12:01 A.M. Local Time At Named Insured's Address

| Form Number | Form Title |
|---|---|
| SLPD (03/08) | SURPLUS LINES DECLARATIONS |
| AWB0102 (02/16) | COMMON POLICY DECLARATIONS |
| CPfs2 (01/11) | FORMS SCHEDULE |
| AWB0103 (02/16) | COMMERCIAL PROPERTY DECLARATIONS |
| ACE0204 (05/10) | FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION |
| ACE0210 (01/08) | NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION ENDORSEMENT |
| ACE0354 (10/13) | ASBESTOS EXCLUSION (ABSOLUTE) |
| ACE0359 (12/10) | EARTHQUAKE SPRINKLER LEAKAGE EXCLUSION |
| ACE0421 (08/09) | PRE-EXISTING PROPERTY DAMAGE EXCLUSION |
| ACE0681 (10/11) | DEFINITION OF LOSS OCCURRENCE ENDORSEMENT |
| ACE0755 (02/13) | COMMERCIAL PROPERTY CONDITIONS |
| ACE126 (10/14) | ELECTRONIC DATA AMENDMENT ENDORSEMENT |
| ALL10750 (01/15) | TERRORISM EXCLUSION ENDORSEMENT |
| AWB0211 (02/16) | WINDSTORM OR HAIL DEDUCTIBLE |
| AWB0213 (10/15) | COSMETIC DAMAGE ROOF EXCLUSION |
| CP0010 (10/12) | BUILDING AND PERSONAL PROPERTY  COVERAGE FORM |
| CP0411 (10/12) | PROTECTIVE SAFEGUARDS |
| CP1030 (10/12) | CAUSES OF LOSS - SPECIAL FORM |
| ILP003 (07/05) | FLOOD COVERAGE ADVISORY NOTICE TO POLICYHOLDERS |
| SL44730a (01/06) | SERVICE OF SUIT ENDORSEMENT - FLORIDA |
| CP0125 (02/12) | FLORIDA CHANGES |
| LD5S23j (03/14) | SIGNATURE ENDORSEMENT |
| IL0017 (11/98) | COMMON POLICY CONDITIONS |
| ALL20887 (10/06) | ACE PRODUCER COMPENSATION PRACTICES & POLICIES |
| ALL21101 (11/06) | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| ALL5X45 (11/96) | QUESTIONS ABOUT YOUR INSURANCE? |
| AWB0311 (02/16) | CLAIMS DIRECTORY |
| AWB0310 (09/15) | MINIMUM EARNED PREMIUM ENDORSEMENT |
| TRIA24 (01/15) | POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE |
| ALL42490b (07/16) | U.S. FOREIGN ACCOUNT TAX COMPLIANCE ACT ("FATCA") |
| ILP001 (01/04) | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL  (OFAC)  ADVISORY NOTICE TO POLICYHOLDERS |

# Commercial Property Declarations



| Company: | Westchester Surplus Lines Insurance Company (A.M. Best Rating A++) | | |
|---|---|---|---|
| SYM: | FS | Policy ID: | FSF13883324 001 |

### Location

| Loc. No. | Bld. No. | Address |
|---|---|---|
| 1 | 1 | 5904 E Hwy 98, Panama City, FL  32404 |
| 1 | 2 | 5904 E Hwy 98, Panama City, FL  32404 |

### Coverages and Limits Provided

Insurance at Described Location Applies Only for Coverage for Which a Limit of Insurance is shown

| Loc. No. | Bld. No. | Coverage | Rate | Limit of Insurance $ | Premium |
|---|---|---|---|---|---|
| 1 | 1 | Building | 0.42 | $500,000 | |
| 1 | 2 | Building | 0.43 | $240,000 | |
| 1 | 2 | Contents/BPP | 0.43 | $5,000 | |
| | | | | Total Advance Premium This Page: | $0 |
| | | | | Total Advance Property Premium: | $6,635 |

### Coverage Options

### Deductible

| $1,000 | [ ] See Multiple Deductible Form | [X] See Windstorm Or Hail Deductible Form |
|---|---|---|

The Replacement Cost and Co-insurance or BI/EE Mo. Limit Of Indemnity options are provided when indicated by an entry below:

| Loc. No. | Bld. No. | Coverage | Covered Causes of Loss Form | Replacement Cost | Co-insurance % or BI/EE Mo. Limit Of Indemnity |
|---|---|---|---|---|---|
| 1 | 1 | Building | Special | X | 80% |
| 1 | 2 | Building | Special | X | 80% |
| 1 | 2 | Contents/BPP | Special | X | 80% |

[ ]  See attached Schedule AWB103s

©Chubb. 2016. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc with its permission

## FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Pier 98 Marina, Inc. | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017 To 10-26-2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

A. The following exclusion is added:

We will not pay for loss, or physical loss or damage, caused directly or indirectly by any of the following. Such loss or physical loss or damage, is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss, or physical loss or damage:

1. Presence, growth, proliferation, spread or activity of "fungus", wet rot or dry rot or bacteria. But if "fungus" wet rot, dry rot or bacteria results in a "specified cause of loss", we will pay for the loss caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet rot or dry rot, or bacteria results from fire or lightning;

2. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot, or bacteria; or

3. The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot, or bacteria.

B. The following are added to the Definitions:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

"Specifiedcause of loss" means: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

"Pollutants"means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement may be attached to a coverage form or an endorsement with a different definition from the listed definitions. If there is a different definition, that definition does not apply to this endorsement.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

# NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Pier 98 Marina, Inc. | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017 To 10-26-2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

A. Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or ra-dioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

B. Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

C. If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to *Loss*.

 .© Chubb. 2016. All rights reserved.

# ASBESTOS EXCLUSION
## (Absolute)

| Named Insured | Endorsement Number |
|---|---|
| Pier 98 Marina, Inc. | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017 To 10-26-2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL PROPERTY COVERAGE PART

### COMMERCIAL INLAND MARINE COVERAGE PART

The following exclusions are added to the policy; supersede any term, provision or endorsement to the contrary in this policy; and apply notwithstanding any such term, provision or endorsement in this policy or in any underlying, contributing or followed policy:

A.  This policy does not cover loss or damage to asbestos, asbestos-containing product or asbestos-containing material.

B.  This policy does not apply to loss, damage, cost, expense, fine or penalty arising out of, resulting from or related in any way to:

1. Removal of any asbestos, asbestos-containing product, or asbestos-containing material.

2. Demolition or increased cost of reconstruction, repair, debris removal, or loss of use necessitated by enforcement of any law, regulation, rule or ordinance regulating asbestos, asbestos-containing product, or asbestos-containing material.

3. Any governmental direction or request declaring that any asbestos, asbestos-containing product, or asbestos-containing material present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

C.  The above exclusions apply to all coverages under this policy.

All other terms and conditions remain unchanged.

 © Chubb. 2016. All rights reserved.

# EARTHQUAKE SPRINKLER LEAKAGE EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Pier 98 Marina, Inc. | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017 To 10-26-2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### COMMERCIAL PROPERTY COVERAGE PART

### COMMERCIAL INLAND MARINE COVERAGE PART

This policy does not insure against loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Loss or damage by sprinkler leakage caused directly by earthquake, earth movement or volcanic eruption.

Definitions

Sprinkler leakage means:

A.   Leakage or discharge of water or other substances from within any automatic sprinkler system, or

B.   Direct loss caused by collapse or fall of a tank forming a part of such system.

Automatic sprinkler system means:

   Any automatic fire protective system including sprinklers, discharge nozzles and ducts, pipes, valves, fittings, tanks (including their component parts and supports), pumps and private fire protection mains, all connected with and constituting a part of an automatic protective system; and non-automatic fire protective systems, hydrants, standpipes or outlets supplied from an automatic fire protective system.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

Case 5:19-cv-00381-TKW-MJF   Document 9-1   Filed 11/06/19   Page 72 of 66

## PRE-EXISTING PROPERTY DAMAGE EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| Pier 98 Marina, Inc. | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017 To 10-26-2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**PROPERTY COVERAGE PART**

**INLAND MARINE COVERAGE PART**

This policy excludes any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing property damage at the time of loss.

© Chubb. 2016. All rights reserved.

## DEFINITION OF LOSS OCCURRENCE ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Pier 98 Marina, Inc. | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017   To   10-26-2018 | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

**COMMERCIAL INLAND MARINE COVERAGE PART**

The following definition is added to this policy; supersedes any other definition, express or implied, of the term "Loss Occurrence" in any term, provision or endorsement to this policy; and applies not withstanding such term, provision or endorsement:

1.   "Loss Occurrence" means the sum of all individual losses arising out of and directly caused by any one disaster, accident or loss or series of disasters, accidents or losses arising out of one event which occurs anywhere within the Coverage Territory.  The duration and extent of any one Loss Occurrence will be limited to all individual losses sustained by the Insured occurring during any period of 72 consecutive hours arising out of and directly caused by the same event, except:

A.   As regards Windstorm (including Tier 1 Counties), Flood, Hail or Tornado, including ensuing collapse, Flood and Water Damage: all individual losses sustained by the Insured occurring during any period of 96 consecutive hours arising out of and directly caused by the same event.

B.   As regards the perils of riot, strike or civil commotion, vandalism and malicious mischief, including losses from all other perils covered hereunder following as a result of the aforesaid perils: all losses or series of losses occurring during any period of 72 consecutive hours arising out of and directly caused by the same event.  The maximum duration of 72 consecutive hours may be extended in respect of individual losses which occur beyond such 72 consecutive hours during the continued occupation of the Insured's premises by strikers, provided such occupation commenced during the aforesaid period.

C.   As regards the peril of Earthquake, including losses from all other perils covered hereunder following as a result of Earthquake: only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Loss Occurrence.

D.   As regards the peril of freeze: only those individual losses directly caused by collapse, breakage of glass, water and/or liquid damage due to burst pipes tanks or pressure vessels; damage to machinery or equipment, stock and/or work in progress due to freeze; and/or individual losses arising directly out of the lack of supply of power, current, coolant and/or fuel due to frozen pipes and/or frozen feed lines may be included in the Loss Occurrence.

Except for those Loss Occurrences referred to in sub-paragraphs A. and B. above, the Insured may chose the date and time when such period of consecutive hours commences, provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of consecutive hours will apply with respect to one event.

However, as respects those Loss Occurrences referred to in sub-paragraphs A. and B. above, if the disaster, accident or loss occasioned by the event is of greater duration than the specified period of consecutive hours, then the Insured may divide that disaster, accident or loss into two or more Loss Occurrences, provided no two periods overlap and no individual loss is included in more than one such period and provided that no period commences earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising from that disaster, accident or loss.

          © Chubb. 2016. All rights reserved.

Case 5:19-cv-00381-TKW-MJF   Document 9-1   Filed 11/06/19   Page 14 of 66

However, we shall not be liable hereunder for any loss or damage:
a) Occurring before this policy becomes effective; or
b) Arising from an "occurrence" which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or
c) Occurring after the expiration of this policy, except loss or damage arising from an "occurrence" in progress at the time this policy expires.


This provision in no way alters any Policy Limit of Liability or Sub-limit of Liability.


All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

Case 5:19-cv-00381-TKW-MJF   Document 81   Filed 11/15/20   Page 30 of 103

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a mate-rial fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect cover-age at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or dam-age occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Cover-age Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of   covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions); and

**b.** Puerto Rico.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Chubb. 2016. All rights reserved.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
© Chubb. 2016. All rights reserved.

## ELECTRONIC DATA AMENDMENT ENDORSEMENT

| Named Insured<br>Pier 98 Marina, Inc. | | Endorsement Number | |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF13883324 001 | Policy Period<br>10-26-2017      To    10-26-2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br> Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART<br>
COMMERCIAL INLAND MARINE COVERAGE PART<br>
COMMERCIAL PROPERTY COVERAGE PART<br>
CRIME AND FIDELITY COVERAGE PART**

The following terms and provisions are added to the Policy; supersede any term, provision or endorsement to the contrary in this Policy; and apply notwithstanding any such term, provision or endorsement in this Policy or in any underlying, contributing or followed policy:

1. This Policy excludes loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

    a. "Electronic Data" by any cause whatsoever (including but not limited to "Computer Virus");

    b. "Electronic Data Processing Equipment" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data"; regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media"; and/or

    c. "Electronic Media" caused by or resulting from the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data"; regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media".

    This exclusion does not apply to loss or damage to "Electronic Data", "Electronic Data Processing Equipment", and "Electronic Media" caused by or resulting from a "Named Peril", if and to the extent such Named Peril is already covered by this or by any underlying policy.

2. This Policy excludes loss, damage, cost or expense resulting from or arising out of any failure, malfunction, deficiency, deletion, fault, Computer Virus or corruption of computer code that results from or arises out of any authorized or unauthorized access by any means and for any purpose, whether intentional or inadvertent, in, of or to any "Electronic Data", "Electronic Data Processing Equipment", or "Electronic Media" and similar data, media, devices, and equipment in the ownership, possession, or control of a third party.

Definitions

1. "Electronic Data" means information, facts or "Computer Programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hardware, computer memory, hard or floppy disks, zip drives, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

ACE126 (10/14)                    © Chubb. 2016. All rights reserved.                    Page 1 of 2

2. "Computer Programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to send, receive, process, store, retrieve, erase, or destroy data, and "Electronic Data" which is integrated in and operates or controls the building's elevator, lighting, plumbing, electricity, heating, ventilation, air conditioning,  security system, safety system, and fire protection system, but does not include prepackaged software held in storage.

3. "Electronic Data Processing Equipment" means "Computers", computer servers and similar equipment and component parts thereof, the purpose of which is to process Electronic Data.

4. "Electronic Media" means any physical device the purpose of which is to hold, store, contain or transfer "Electronic Data", and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

5. "Computers" includes but is not limited to mainframes, servers, workstations and portable computing devices, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

6. "Computer Virus" means instructions, code, files, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, impede, or prevent access to "Electronic Data", "Electronic Media" or "Computers", or to disrupt or interfere with the operations of "Computers", or to disrupt or interfere with the operation of any software or the reliability of any "Electronic Data", including but not limited to malicious codes, malware, Trojan Horses, worms and time or logic bombs.

7. "Named Peril" means the perils of Fire; Lightning; Explosion; Windstorm or Hail; Smoke; Aircraft or Vehicles; Riot and Civil Commotion; Willful or malicious physical loss or damage by a means other than "Computer Virus" and/or an authorized or unauthorized access in, of or to any "Electronic Data", "Electronic Data Processing Equipment" and/or "Electronic Media"; Leakage from fire extinguishing equipment; Sinkhole Collapse; Volcanic Action; Building glass breakage; Falling Objects, Weight of snow, ice or sleet, Water Damage; Sonic Boom; Theft; Flood, Earthquake or Earth Movement.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

## TERRORISM EXCLUSION ENDORSEMENT

| Named Insured Pier 98 Marina, Inc. | | | | Endorsement Number |
|---|---|---|---|---|
| Policy Symbol FS | Policy Number FSF13883324 001 | Policy Period 10-26-2017   To   10-26-2018 | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) Westchester Surplus Lines Insurance Company | | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART**
**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE FORM**
**COMMERCIAL PROPERTY COVERAGE PART**
**STANDARD PROPERTY POLICY**

The following exclusion is added to this policy and applies to all coverages, additional coverages, and coverage extensions, notwithstanding any provision to the contrary in this policy or any other endorsement hereto:

A.  This insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence thereto:

1.  "Act of Terrorism"; or

2.  Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism; or

3.  dispersal, application, or release of any actual or alleged pathogen, poison, biologic or chemical product, material, waste or substance as a result of an Act of Terrorism, and it reasonably appears that one purpose of the Act of Terrorism was to release such product, material, waste or substance.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

The terms and limitations of this exclusion do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as, but not limited to, losses excluded by the "Nuclear Exclusion" or the "War Exclusion" or similar provision.

B.  As used in this endorsement:

1.  "Act of Terrorism" means any act against persons, organizations or property of any nature that involves the following or preparation for the following:

a.  Use or threat of force or violence; or

b.  Commission or threat of a dangerous act; or

ALL-10750 (01/15)                    © Chubb. 2016. All rights reserved.                    Page 1 of 2

    c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.  Appears to be intended, in whole or in part, to:

    a.  Intimidate or coerce a government or the civilian population; or

    b.  Disrupt any segment of a nation's economy; or

    c.  Influence the policy of a government by intimidation or coercion; or

    d.  Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

    e.  Further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; or

    f.  Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

C.  Exception Covering Certain Fire Losses

If an Act of Terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire,  this Company will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy, to the lesser of the actual cash value of the property at the time of the loss or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

All other terms and conditions remain unchanged.

# WINDSTORM OR HAIL DEDUCTIBLE FORM

| Named Insured<br>Pier 98 Marina, Inc. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF13883324 001 | Policy Period<br>2017-10-26 To 2018-10-26 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>WestchesterSurplusLines | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

| Minimum Dollar Deductible $2,500 | | | Per Occurrence (applicable with a Percentage Deductible) | | |
|---|---|---|---|---|---|
| **Location #** | **Building #** | **Percentage or Dollar Deductible** | **Applicable to "Named Storm" Only** | | **Applicable to "Hawaii Hurricane" Only** |
| 1 | 1 | $2,500 | ☐ Yes ☒ No | | ☐ Yes ☒ No |
| 1 | 1 | $2,500 | ☐ Yes ☒ No | | ☐ Yes ☒ No |

With respect to loss or damage caused directly or indirectly by:

1.  Windstorm or hail, or

2.  Rain damage to the interior of any building or structure, or the property inside the building or structure, whether the rain is driven by wind or not, provided the building or structure first sustains windstorm or hail damage to its roof or walls through which the rain enters,

the Deductibles shown in the Schedule above replace any other applicable deductible.

Each location deductible shown in the Schedule above applies separately to such location, regardless of the number of locations that suffer loss or damage.

AWB0211 (02/16)

© Chubb. 2016. All rights reserved.

Page 1 of 2

**A. Calculation of Percentage Deductible:**

If the applicable deductible for a location is shown as a percentage, for each windstorm or hail occurrence, the deductible for such location will be calculated and applied separately to:

1. Each building or structure;

2. The contents in or on each building or structure;

3. Personal Property in the open;

4. Business Income/Extra Expense and/or Rental Value; and

5. All other covered items.

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the applicable Percentage Deductible, shown in the Schedule above, to each value listed in the most recent Schedule Of Values, for each covered item that has sustained loss or damage and for which a claim is being made under this policy.

If a covered item is not included in the most recent Schedule Of Values, the total values of such covered item at the time of loss and at the location that suffered loss or damage will be used.

In no event will the deductible amount determined above be less than the applicable Minimum Dollar Deductible shown in the Schedule above.

**B. Calculation of Dollar Deductible:**

If the applicable deductible for a location is shown in dollars, for each windstorm or hail occurrence, in determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the applicable Dollar Deductible shown in the Schedule above from the total amount of loss or damage at such location. This Dollar Deductible does not apply to Extra Expense.

C. The deductibles calculated above apply after any reduction required by the coinsurance condition, if applicable.

D. If coverage is provided for Business Income, the deductibles calculated above apply in addition to the 72 hour waiting period as stated in Form CP 0030 "Business Income (and Extra Expense) Coverage Form" or Form CP 0032 "Business Income (without Extra Expense) Coverage Form" as regards to loss or damage described above.

E. If indicated in the Schedule above, the provisions of this endorsement apply only to "Named Storms" or "Hawaii Hurricanes" as defined in the Named Storm Deductible And Named Storm Definition Endorsement, form ACE0244 or the Hawaii Hurricane Definition And Hawaii Hurricane Deductible Endorsement, form ACE0249 attached to this policy.

All other terms and conditions remain unchanged.

AWB0211 (02/16)

© Chubb. 2016. All rights reserved.

Case 5:19-cv-00381-TKW-MJF   Document 91   Filed 11/15/19   Page 23 of 66

# COSMETIC DAMAGE ROOF EXCLUSION

| Named Insured<br>Pier 98 Marina, Inc. | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>FS | Policy Number<br>FSF13883324 001 | Policy Period<br>10-26-2017 To 10-26-2018 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| 1 | 2 |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule:

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

All other terms and conditions remain unchanged.

© Chubb. 2016. All rights reserved.

1

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

#### a. Building, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

#### b. Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others;

#### c. Personal Property Of Others that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

  **(1)** The lowest basement floor; or

  **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

  **(1)** Are licensed for use on public roads; or

  **(2)** Are operated principally away from the described premises.

  This paragraph does not apply to:

    **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land and water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

© Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011 CP 00 10 10 12

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

© Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

    (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
– 250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

© Insurance Services Office, Inc., 2011

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

(4) Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

When:

| | |
|---|---|
| The value of the property is: | $ 250,000 |
| The Coinsurance percentage for it is: | 80% |
| The Limit of Insurance for it is: | $ 100,000 |
| The Deductible is: | $      250 |
| The amount of loss is: | $  40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

When:

| | |
|---|---|
| The value of the property is: | $ 250,000 |
| The Coinsurance percentage for it is: | 80% |
| The Limit of Insurance for it is: | $ 200,000 |
| The Deductible is: | $      250 |
| The amount of loss is: | $  40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

 © Insurance Services Office, Inc., 2011

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:   The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |

| | |
|---|---:|
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $ 1,000 |
| The amount of loss is: | |
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

© Insurance Services Office, Inc., 2011

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

    **(1)** On or after the effective date of this Optional Coverage; and

    **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

    **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

    **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

    **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

    **(1)** Personal property of others;

    **(2)** Contents of a residence;

    **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

    **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

    Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

    **(1)** Until the lost or damaged property is actually repaired or replaced; and

    **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

    With respect to tenants' improvements and betterments, the following also apply:

    **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

    **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

    **(1)** The Limit of Insurance applicable to the lost or damaged property;

    **(2)** The cost to replace the lost or damaged property with other property:

        **(a)** Of comparable material and quality; and

        **(b)** Used for the same purpose; or

    **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

    If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

Case 5:19-cv-00381-TKW-MJF   Document 91   Filed 11/15/19   Page 40 of 66

POLICY NUMBER: FSF13883324 001                          **COMMERCIAL PROPERTY**
                                                        **CP 04 11 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| **Describe Any "P-9":** | | |
| | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property **Conditions:**

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1" Automatic Sprinkler System,** including related supervisory services.

    Automatic Sprinkler System means:

    **a.** Any automatic fire protective or extinguishing system, including connected:

    **(1)** Sprinklers and discharge nozzles;

    **(2)** Ducts, pipes, valves and fittings;

    **(3)** Tanks, their component parts and supports; and

    **(4)** Pumps and private fire protection mains.

    **b.** When supplied from an automatic fire protective system:

    **(1)** Non-automatic fire protective systems; and

    **(2)** Hydrants, standpipes and outlets.

    **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

    **a.** Connected to a central station; or

    **b.** Reporting to a public or private fire alarm station.

    **"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

    **"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

    **"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

    **a.** Hood;

    **b.** Grease removal device;

    **c.** Duct system; and

    **d.** Wet chemical fire extinguishing equipment.

    **"P-9",** the protective system described in the Schedule.

Case 5:19-cv-00381-TKW-MJF   Document 91   Filed 11/06/19   Page 41 of 66

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form
Causes Of Loss – Broad Form
Causes Of Loss – Special Form
Mortgageholders Errors And Omissions Coverage Form
Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)** Airborne volcanic blast or airborne shock waves;

   **(b)** Ash, dust or particulate matter; or

   **(c)** Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

 © Insurance Services Office, Inc., 2011

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

© Insurance Services Office, Inc., 2011

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

© Insurance Services Office, Inc., 2011

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    **d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

    However, this limitation does not apply to:

    **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

    **(2)** Business Income Coverage or Extra Expense Coverage.

    **e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

    **f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

    **g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

    **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

    **(2)** Changes in or extremes of temperature;

    **(3)** Disease;

    **(4)** Frost or hail; or

    **(5)** Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    **a.** Animals, and then only if they are killed or their destruction is made necessary.

    **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

    **(1)** Glass; or

    **(2)** Containers of property held for sale.

    **c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

    However, this limitation does not apply:

    **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

    **(2)** To Business Income Coverage or to Extra Expense Coverage.

   © Insurance Services Office, Inc., 2011   **CP 10 30 10 12**

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.;**

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

1. **Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   **a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   **b.** Loss or damage must be caused by or result from one of the following causes of loss:

      **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

      **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   **c.** The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. **Glass**

   **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

   **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

   **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 © Insurance Services Office, Inc., 2011 CP 10 30 10 12

# FLOOD COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

THIS POLICY DOES NOT COVER DAMAGE FROM FLOOD.

FOR INFORMATION ABOUT FLOOD INSURANCE, PLEASE CONTACT THE NATIONAL FLOOD INSURANCE PROGRAM OR YOUR INSURANCE AGENT.

© ISO Properties, Inc.,  2005

# SERVICE OF SUIT ENDORSEMENT - FLORIDA

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pier 98 Marina, Inc.** | | | **SL44730a0106** |
| Policy Symbol<br>**FS** | Policy Number<br>**FSF13883324 001** | Policy Period<br>**10-26-2017 to 10-26-2018** | Effective Date of Endorsement<br>**10-26-2017** |
| Issued By (Name of Insurance Company)<br>**Westchester Surplus Lines Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

>       Chief Financial Officer of the State of Florida
>       Department of Financial Services
>       200 E. Gaines Street
>       Tallahassee, FL 32399

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.  However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

Florida law requires that the Chief Financial Officer of the State of Florida be designated as the company's agent for service of process. In Florida the company designates the Chief Financial Officer as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Chief Financial Officer to mail process received on the company's behalf to the company person named below.

>       Mr. Paul Bech, Esq., Associate General Counsel
>       Chubb
>       436 Walnut Street
>       Philadelphia, PA 19106-3703

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

SL-44730a (01/16)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intracoastal Waterway in the counties of:

**a.** Indian River; and

**b.** St. Lucie.

**Windstorm Exterior Paint And Waterproofing Exclusion**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of buildings unless the building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The **Loss Payment** Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage upon the earliest of the following:

**(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you;

**(2)** Within 30 days after we receive the sworn proof of loss and:

**(a)** There is an entry of a final judgment; or

**(b)** There is a filing of an appraisal award with us; or

**(3)** Within 90 days of receiving notice of an initial, reopened or supplemental claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 90-day time period for payment of claim relates to the portion of the claim that is not denied.

Paragraph **(3)** applies only to the following:

**(a)** A claim under a policy covering residential property;

**(b)** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the policy covers only locations in Florida; or

© Insurance Services Office, Inc., 2011

(c) A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the policy covers only locations in Florida.

**E. Sinkhole Collapse Coverage Removed**

Sinkhole Collapse coverage is removed, as indicated in Paragraphs **E.1.** through **E.4.;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **F.**

**1.** In the Causes Of Loss – Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

**2.** In the Causes Of Loss – Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage – Collapse; and sinkhole collapse is no longer an exception to the Earth Movement Exclusion.

**3.** In the Causes Of Loss – Special Form, Sinkhole Collapse is deleted from the "specified causes of loss" and is no longer an exception to the Earth Movement Exclusion.

**4.** In the Mortgageholders Errors And Omissions Coverage Form, Sinkhole Collapse is deleted from the Covered Causes of Loss under Coverage **B** and from the "specified causes of loss", and is no longer an exception to the Earth Movement Exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

**F.** The following is added to this Coverage Part as a Covered Cause of Loss. In the Causes Of Loss – Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage – Collapse.

**Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

**1.** The abrupt collapse of the ground cover;

**2.** A depression in the ground cover clearly visible to the naked eye;

**3.** "Structural damage" to the building, including the foundation; and

**4.** The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

**G.** The following applies to the **Additional Coverage – Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

**1.** The Additional Coverage – Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

**2.** The Additional Coverage – Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four-week period is replaced by a three-week period.

**3.** Civil Authority coverage is subject to all other provisions of that Additional Coverage.

H. The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

    (1) A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

    This provision concerning time for submission of claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this policy under the Legal Action Against Us Condition, including any amendment to that condition.

    (2) Any inspection or survey by us, or on our behalf, of property that is the subject of a claim, will be conducted with at least 48 hours' notice to you. The 48-hour notice may be waived by you.

I. The following definition of structural damage is added with respect to the coverage provided under this endorsement:

"Structural damage" means a covered building, regardless of the date of its construction, has experienced the following.

1. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

2. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

3. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

4. Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

5. Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

© Insurance Services Office, Inc., 2011

# SIGNATURES

| Named Insured | Endorsement Number |
|---|---|
| **Pier 98 Marina, Inc.** | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **FS** | **FSF13883324 001** | **10-26-2017 to 10-26-2018** | |

| Issued By (Name of Insurance Company) |
|---|
| **Westchester Surplus Lines Insurance Company** |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

LD-5S23j (03/14)

Case 5:19-cv-00381-TKW-MJF   Document 91   Filed 11/15/20   Page 73 of 103

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



# Chubb Producer Compensation
# Practices & Policies

Chubb believes that policyholders should have access to information about Chubb'spractices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | | Endorsement Number |
|---|---|---|---|---|
| Pier 98 Marina, Inc. | | | | |

| Policy Symbol | Policy Number | Policy Period | | Effective Date of Endorsement |
|---|---|---|---|---|
| FS | FSF13883324 001 | 10-26-2017          to 10-26-2018 | | |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.                                                                Page 1 of 1



# Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling Chubb, Customer Support Service Department, at 1-800-352-4462.



# Claims Directory

**Claims or Loss Notices related to this policy should be reported to the following:**

| Claim Office | Email and Fax | Location |
|---|---|---|
| Chubb<br>North American<br>Claims | First Notices Email:<br>ChubbClaimsFirstNotice@Chubb.com<br><br>First Notices Fax:<br>    215-640-5041 or<br>    1-877-395-0310<br><br>General Correspondence Fax:<br>    1-866-635-5688 | P.O. Box 5122<br>Scranton, PA<br>18505-0554 |

© Chubb. 2016. All rights reserved.

# MINIMUM EARNED PREMIUM ENDORSEMENT

| Named Insured<br>Pier 98 Marina, Inc. | | | Endorsement Number<br>AWB03100915 |
|---|---|---|---|
| Policy Symbol<br>CP | Policy Number<br>FSF13883324 001 | Policy Period<br>10-26-2017 to  10-26-2018 | Effective Date of Endorsement<br>10-26-2017 |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **Section** IV - **Conditions:**

**Cancellation by You; Minimum Earned Premium**

If this policy is cancelled at your request, there will be a minimum earned premium retained by us, determined as follows:

    (i)   Minimum Earned Premium at inception: $  _____  , or

    (ii)   Minimum Earned Premium at inception:  25% of Policy Term Premium

whichever is greater.

All other terms and conditions of this policy remain unchanged.

AWB0310 (09-15)

1

© Chubb. 2016. All rights reserved.



**Westchester**
A Chubb Company

| | |
|---|---|
| Westchester Surplus Lines Insurance Company | |
| Insurance Company | |
| Pier 98 Marina, Inc. | |
| Policyholder | |
| FSF13883324 001 | |
| Policy Number | |
| HULL & COMPANY INC | |
| Broker/Producer | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% FOR YEAR 2015, 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017, 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $199.05, however you elected to decline such coverage.

TRIA24 (01/15)



# U.S. FOREIGN ACCOUNT
# TAX COMPLIANCE ACT ("FATCA")

The U.S. Foreign Account Tax Compliance Act, commonly known as "FATCA", became the law in the U.S. in March of 2010 and becomes effective July 1, 2014.  Pursuant to FATCA, brokers, producers, agents and/or clients may need to obtain withholding certificates from insurance companies.  For information on how to obtain the applicable withholding certificate from Chubb U.S. insurance companies, please go to the following web site:

http://www2.chubb.com/us-en/u-s-foreign-account-tax-compliance-act-fatca.aspx

ALL-42490b (07/16)

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

ELITE MITIGATION SERVICES LLC,
A/A/O GRETA LAWRENCE,

Plaintiff,

vs.                                    CASE NO.: 5:19-CV-381-TKW-MJF

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

Defendant.
_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

**COMES NOW** the Plaintiff, Elite Mitigation Services LLC a/a/o Greta Lawrence, by and through the undersigned counsel, pursuant to Federal Rules of Civil Procedure 26 and 33, and hereby propounds the following Interrogatories upon the Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY, and requests that Defendant answer said Interrogatories in writing and under oath, within 30 days of the date of service.

## DEFINITIONS

1. "Plaintiff". The term Plaintiff as used herein shall mean Elite Mitigation Services LLC, and its representatives as defined in Paragraph 4 hereof.

2. "Assignor". The term Assignor as used herein shall mean Greta Lawrence

and his/her representatives as defined in Paragraph 4 hereof.

3.  "<u>Defendant</u>". The term Defendant shall mean WESTCHESTER SURPLUS LINES INSURANCE COMPANY, whether by that name or any other, and its representatives as defined in Paragraph 4 hereof.

4.  "<u>Representatives</u>". The term "representatives" shall mean any and all present or former agents, employees, servants, officers, directors, attorneys, consultants, sureties, indemnifiers, insurers, and other persons acting or purporting to act on behalf of the entity referred to.

5.  "<u>You</u>" or "<u>Your</u>" shall refer to Defendant, WESTCHESTER SURPLUS LINES INSURANCE COMPANY and any other person or entity acting or purporting to act on its behalf.

6.  "<u>Document</u>".  The term "document" shall mean any written, printed, typed or other graphic or photographic matter (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings and motion pictures and data stored on a computer disc or computer hard drive) and shall include the originals, identical copies and all non-identical copies, whether different from the original by reason of any notation made on each copy or otherwise and shall include, without limiting the generality of the foregoing, all letters, telegrams, teletypes, correspondence, contracts, agreements, notes, mechanical and electronic sound recordings and transcripts thereof (including, without limitation, tapes, cassettes, discs and digital recordings), computer printouts and other printed matter produced through computers, calendar and diary entries, memoranda, notes and records of all telephone or personal conversations, meetings or any other communication, inter-office and intra-office communications, statements, manuals, summaries and compilations, minutes of meetings, charges, maps, reports, analysis, studies, graphs, prospectus, returns, statistics, pamphlets,

books, offers, bulletins, order, papers, articles, catalogs, records, tables, books of account, ledgers, vouchers, canceled checks, invoices, bills, receipts, tickets, worksheets, computer and digital records, as well as all digitally stored and generated documents and notes, and all drafts, alterations, modifications and changes to any of the foregoing.

7. "Identify". The term "identify" when used with reference to a person shall mean to: State the full name of the person, last known full address of the person, the employer of the person (if known), and the business phone number of the person (or home phone number of the person if their business phone number is not known). Once identified, a person may be subsequently identified by uniform use of a standard name.

## **INSTRUCTIONS**

Should the Defendant claim an Interrogatory is objected to or not answered under a claim of privilege, the Defendant is required to:

a. State the basis of the claim of privilege;

b. Identify the subject matter of the information to which a claim of privilege is made;

c. Identify all persons or entities who have had access to or claimed to be privileged or were present when the privileged information was discussed, and

d. The identity of all persons or entities to whom the privileged information has been disclosed.

**INTERROGATORY NO. 1:** What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatory is directed?

**ANSWER:**

**INTERROGATORY NO. 2:**  State the facts upon which you rely for each affirmative defense in your Answer to the Complaint, or in support of a Motion to Dismiss if such was filed.

**ANSWER:**

**INTERROGATORY NO. 3:**  State each and every policy provision upon which you are relying in connection with your decision to deny, or otherwise not make payment in full on Plaintiff's invoices for the property damages incurred by Assignor or claimed by Plaintiff in this matter.

**ANSWER:**

**INTERROGATORY NO. 4:** Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, or by Assignor, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

**ANSWER:**

**INTERROGATORY NO. 5:** State the name and address of every person known to you, your agents, or your attorneys, who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

**ANSWER:**

**INTERROGATORY NO. 6:** Identify with specificity any policies of insurance which may provide insurance coverage to the Plaintiff, the Assignor, or any other person, firm, corporation or company, for the property damage incident alleged in Plaintiff's Complaint or for the damages which Plaintiff has alleged, including, but not limited to, the full legal name of the insurer, the full name and address of each insured, the policy number, any claim numbers applicable to this action, the effective dates of the policy (including any lapses in coverage), the limits of property damage and any deductibles applicable to the damages alleged in this action.

**ANSWER:**

**INTERROGATORY NO 7:**   As to each policy of insurance identified by you in Interrogatory 6 above, state in specificity whether there are any known coverage disputes or coverage issues currently known to you or alleged by you, including but not limited to, denials of coverage, coverage under reservation of rights, or other declaratory actions to determine coverage or the extent of coverage.

**ANSWER:**

**INTERROGATORY NO. 8:** Identify by name, address, phone number, employer and title/position all persons who are or have been responsible for making any decisions on your behalf to deny insurance coverage to Assignor or Plaintiff, deny any of Plaintiff's bills or invoices in question, or to deny any portion of any bill or invoice submitted by Plaintiff to you for the property damages described in Plaintiffs' Complaint and for each such individual state what decisions were made by said individual.

**ANSWER:**

**INTERROGATORY NO. 9:**   As to any and all decisions identified in answer to Interrogatory 8 above, identify with specificity all documents which were reviewed by and relied upon by said individual(s) in making said determination, identify (defined above) all persons with whom said individual(s) communicated in making said determination and state the dates when each such decision was made.

**ANSWER:**

**INTERROGATORY NO. 10:** Identify (defined above) all persons involved on your behalf in the handling of the claims at issue in Plaintiff's Complaint and for each such person state the time period during which they were involved in the handling of said claims on your behalf and what role they played in the handling of this claim on your behalf.

**ANSWER:**

**INTERROGATORY NO. 11:** If you allege that Plaintiff or Assignor has failed to perform any conditions precedent to the bringing of this action, or has failed to

fulfill any duties after the accident and/or loss, please identify (defined above) each such person or company with specificity and state what condition precedent or duty under your insurance policy was not timely performed or met.

**ANSWER:**

**INTERROGATORY NO. 12:** List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge. The issues in this lawsuit include, but are not limited to, the property damage event which occurred on the date alleged in the Complaint, the property damages sustained at the home of Assignor in regards to said event, the work performed by Plaintiff and its representatives (defined above) described in the Complaint and its attachments, the invoices and bills submitted by Plaintiff or its representatives (defined above) to Defendant, the claims as set forth by Plaintiff in the Complaint, and the defenses which you are or anticipate asserting to Plaintiff's claims.

**ANSWER:**

**INTERROGATORY NO. 13:** As to any statements of any kind (written, recorded, transcribed, digital or otherwise) obtained by you from Assignor or any other witness in connection with the property damage occurrence which is the basis of this law suit, including the invoices and damages alleged by the Plaintiff, identify (defined above) each such person from whom a statement was taken, state the date when each such statement was taken, state the manner in which it was taken and identify (defined above) the person who took or recorded each such statement.

**ANSWER:**

**INTERROGATORY NO. 14:** As to any portion of the loss alleged and invoices of Plaintiff attached to the Complaint which you contend are not covered by Assignor's insurance policy issued by you, please set forth the specific amount which you contend are not covered, and for each such amount, all facts supporting your contention that no coverage exists for said amount.

**ANSWER:**

**INTERROGATORY NO. 15:**   As to any portion of the invoices and bills of Plaintiff attached to the Complaint which you contend are not reasonable in their amount, specifically identify that portion of the work performed, invoice or bill which you allege to be unreasonable and state all factual and legal basis which you allege support that contention.

**ANSWER:**

**INTERROGATORY NO. 16:** Identify (defined above) any persons or companies not employed directly by your company who provided you with any services, analyses, outside adjusting, or otherwise rendered opinions to you in the adjusting of the Plaintiff's claim, please identify:

a.  The name of the individual who hired the third party on behalf of your company.

b.  The date and nature of the services provided by the third party.

c.  Each case in which the third party has been retained by you for any purpose during the past three years.

d. The amount of money that the third party has been paid by you during the past three years.

e. Please state the taxpayer identification numbers for both you and the third party.

**ANSWER:**


**INTERRROGATORY NO. 17:** On what date did you anticipate litigation in the

underlying insurance claim?

**ANSWER:**

## **AFFIDAVIT**

Dated_____, 20__.   _____
Signature of Agent for Defendant

**STATE OF**_____

**COUNTY OF**_____

    **BEFORE ME**, the undersigned authority,  personally appeared the Agent for Defendant WESTCHESTER SURPLUS LINES INSURANCE COMPANY _____, who  is  personally  known  to  me  or  who produced _____ as  identification,  and  who  deposed  and  stated  that  the information  contained  in  the  foregoing  Answers  to  Interrogatories  is  true  and correct, to the best of his/her knowledge and belief.

    **SWORN AND SUBSCRIBED** before me in the aforesaid County and State this _____ day of _____,20____.

                    _____
                    Notary Public
                    Commission No._____

(SEAL)

                    _____
                    (Name of Notary typed, printed or stamped)
                    My Commission expires: _____

## <u>CERTIFICATION OF SERVICE</u>

I DO HEREBY CERTIFY that on October 24, 2019 the foregoing was served

via electronic mail to: Richard Young at RYoung@MFLLaw.com.

/s/ *Ali A. Kadir*
**ALI A. KADIR, ESQ.**
Florida Bar No.: 13582
**KUHN RASLAVICH, P.A.**
500 N. Maitland Ave., Suite 111
Maitland, FL 32751
Telephone: (407) 501 – 4833
Facsimile: (407) 501 – 4856
Ali@theKRfirm.com
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ELITE MITIGATION SERVICES,       )
LLC a/a/o Greta Lawrence,        )
                                 )
Plaintiff,                       )
                                 )
v.                               ) Case No.: 5:19-cv-381-TKW-MJF
                                 )
WESTCHESTER SURPLUS LINES        )
INSURANCE COMPANY,               )
                                 )
Defendant.                       )
_____

## DEFENDANT WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S UNVERIFIED RESPONSE TO PLAINTIFF'S INTERROGATORIES

Defendant Westchester Surplus Lines Insurance Company ("Westchester"), by and through its undersigned attorney, hereby responds to plaintiff's interrogatories as follows:

INTERROGATORY NO. 1: What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatory is directed?

**ANSWER: Cynthia Vann, Senior Claim Director, with assistance from counsel for Westchester, provided the information used in answering these interrogatories.**

INTERROGATORY NO. 2: State the facts upon which you rely for each affirmative defense in your Answer to the Complaint, or in support of a Motion to Dismiss if such was filed.

**ANSWER:  Greta Lawrence and/or Pier 98 have directly paid plaintiff at least $50,922.38. Those checks paid to plaintiff are as follows: (1) Lawrence check no. 2775 in the amount of $14,310.00 dated December 11, 2018; (2) Lawrence**

**check no. 2785 in the amount of $9,841.90 dated January 4, 2019; and (3) Pier 98 check no. 13358 in the amount of $26,770.48 dated December 11, 2018. Plaintiff demanded full payment of its two invoices in the amount of $55,314.29 and $26,207.13 from Westchester despite receiving and negotiating these payments from Lawrence and/or Pier 98. The remaining affirmative defenses are self-explanatory.**

INTERROGATORY NO. 3: State each and every policy provision upon which you are relying in connection with your decision to deny, or otherwise not make payment in full on Plaintiff's invoices for the property damages incurred by Assignor or claimed by Plaintiff in this matter.

**ANSWER: Westchester has not denied the underlying claim made by the insured. To the contrary, Westchester and the insured have resolved all issues pertaining to the claim except plaintiff's invoices. Westchester and the insured's public adjuster maintain that plaintiff's invoices are excessive in both price and scope. Before initiation of this lawsuit, Westchester made multiple inquiries to plaintiff regarding its billing practices, but plaintiff failed to substantively respond to any of these inquires.**

INTERROGATORY NO. 4: Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, or by Assignor, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

**ANSWER: Westchester objects to interrogatory number 4 because it is overly broad and vague. Without waiving these objections, and specifically subject to the objections, there are no recorded statements, transcripts or other recordings of the substance of statements regarding this lawsuit. Westchester believes that the following individuals may have knowledge of the facts at issue in this matter:**

**Dan Hogan**
**Public Adjuster retained by insured**
**Dan Hogan, PA**
**3526 E. FM 528**
**Suite 206**
**Friendswood, TX 77546**

**Leon Spears**
**National General Adjuster**
**Sedgwick**
**438 Katherine Drive, Suite A**
**Flowood, MS 39232**

**Scott Wiggins**
**Employee of plaintiff**

**Caleb (Last name unknow)**
**Employee of plaintiff**

**Unknown employee of plaintiff who signed the purported assignment of benefits**

**Hunter (Last name unknown)**
**Employee of plaintiff**

**Cory Chandler**
**Blackwell Insurance**
**PO Box 520**
**Panama City, Florida 32402**

INTERROGATORY NO. 5: State the name and address of every person known to you, your agents, or your attorneys, who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, videotape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

**ANSWER: Pursuant to Fed. R. Civ. P. 33(d), Westchester has produced documents responsive to interrogatory number 5. Westchester does not know of any other documents in the possession of other people or entities.**

INTERROGATORY NO. 6: Identify with specificity any policies of insurance which may provide insurance coverage to the Plaintiff, the Assignor, or any other person, firm, corporation or company, for the property damage incident alleged in Plaintiff's Complaint or for the damages which Plaintiff has alleged, including, but not limited to, the full legal name of the insurer, the full name and address of each insured, the policy number, any claim numbers applicable to this action, the effective

dates of the policy (including any lapses in coverage), the limits of property damage and any deductibles applicable to the damages alleged in this action.

**ANSWER: Pursuant to Fed. R. Civ. P. 33(d), Westchester has produced a copy of the Westchester commercial property insurance policy, number FSF13883324 001, in response to interrogatory number 6. Westchester does not have knowledge of any other policies responsive to this interrogatory.**

INTERROGATORY NO 7: As to each policy of insurance identified by you in Interrogatory 6 above, state in specificity whether there are any known coverage disputes or coverage issues currently known to you or alleged by you, including but not limited to, denials of coverage, coverage under reservation of rights, or other declaratory actions to determine coverage or the extent of coverage.

**ANSWER: Westchester and its insured have resolved all issues pertaining to the claim except for plaintiff's invoices.**

INTERROGATORY NO. 8:    Identify by name, address, phone number, employer and title/position all persons who are or have been responsible for making any decisions on your behalf to deny insurance coverage to Assignor or Plaintiff, deny any of Plaintiff's bills or invoices in question, or to deny any portion of any bill or invoice submitted by Plaintiff to you for the property damages described in Plaintiffs' Complaint and for each such individual state what decisions were made by said individual.

**ANSWER: Westchester did not deny the underlying claim made by the insured. To the contrary, Westchester and the insured have resolved all issues pertaining to the claim except for plaintiff's invoices. Westchester and the insured's public adjuster believe that plaintiff's invoices are excessive in both price and scope. Before initiation of this lawsuit, Cynthia Vann, Senior Claim Director, made multiple inquiries to plaintiff regarding its billing practices and requested further information on behalf of Westchester, but plaintiff failed to substantively respond to these inquires. Loss Management Solutions ("LMS") also contacted plaintiff to request information regarding the invoices, but never received a response. The address for LMS is 395 West State Hwy. 114, Suite 200, Southlake, TX 76092. As of the date of filing this lawsuit, the insured's claim remained open while Westchester waited for a substantive response to Westchester's inquiries.**

- 4 -

INTERROGATORY NO. 9: As to any and all decisions identified in answer to Interrogatory 8 above, identify with specificity all documents which were reviewed by and relied upon by said individual(s) in making said determination, identify (defined above) all persons with whom said individual(s) communicated in making said determination and state the dates when each such decision was made.

**ANSWER: Westchester did not deny the underlying claim made by the insured. To the contrary, Westchester and the insured have resolved all issues pertaining to the claim except for plaintiff's invoices. Westchester and the insured's public adjuster believe that plaintiff's invoices are excessive in both price and scope. Before initiation of this lawsuit, Cynthia Vann, Senior Claim Director, made multiple inquiries to plaintiff regarding its billing practices and requested further information on behalf of Westchester, but plaintiff failed to substantively respond to these inquires. Loss Management Solutions ("LMS") also contacted plaintiff to request information regarding the invoices, but never received a response. The address for LMS is 395 West State Hwy. 114, Suite 200, Southlake, TX 76092. As of the date of filing this lawsuit, the insured's claim remained open while Westchester waited for a substantive response to Westchester's inquiries.**

INTERROGATORY NO. 10: Identify (defined above) all persons involved on your behalf in the handling of the claims at issue in Plaintiff's Complaint and for each such person state the time period during which they were involved in the handling of said claims on your behalf and what role they played in the handling of this claim on your behalf.

ANSWER:

**Cynthia Vann
Senior Claim Director
c/o Westchester's attorneys**

INTERROGATORY NO. 11: If you allege that Plaintiff or Assignor has failed to perform any conditions precedent to the bringing of this action, or has failed to fulfill any duties after the accident and/or loss, please identify (defined above) each such person or company with specificity and state what condition precedent or duty under your insurance policy was not timely performed or met.

**ANSWER: Plaintiff has the duty to cooperate with Westchester in connection with its investigation of plaintiff's claim for payment of its invoices. Before**

- 5 -

**initiation of this lawsuit, Cynthia Vann, Senior Claim Director, made multiple inquiries to plaintiff regarding its billing practices and requested further information on behalf of Westchester, but plaintiff failed to substantively respond to these inquiries. Loss Management Solutions ("LMS") also contacted plaintiff to request information regarding the invoices, but never received a response. The address for LMS is 395 West State Hwy. 114, Suite 200, Southlake, TX 76092. As of the date of filing this lawsuit, the insured's claim remained open while Westchester waited for a substantive response to Westchester's inquiries from plaintiff.**

INTERROGATORY NO. 12: List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge. The issues in this lawsuit include, but are not limited to, the property damage event which occurred on the date alleged in the Complaint, the property damages sustained at the home of Assignor in regards to said event, the work performed by Plaintiff and its representatives (defined above) described in the Complaint and its attachments, the invoices and bills submitted by Plaintiff or its representatives (defined above) to Defendant, the claims as set forth by Plaintiff in the Complaint, and the defenses which you are or anticipate asserting to Plaintiff's claims.

**ANSWER:**

**See Westchester's response to interrogatory numbers 4 and 10 above.**

**Greta Lawrence**
**Resident of the property and President of Pier 9 Marina, Inc.**
**5904 Highway 98 East**
**Panama City, FL 32404**

INTERROGATORY NO. 13: As to any statements of any kind (written, recorded, transcribed, digital or otherwise) obtained by you from Assignor or any other witness in connection with the property damage occurrence which is the basis of this law suit, including the invoices and damages alleged by the Plaintiff, identify (defined above) each such person from whom a statement was taken, state the date when each such statement was taken, state the manner in which it was taken and identify (defined above) the person who took or recorded each such statement.

- 6 -

**ANSWER: Westchester does not possess any statements responsive to interrogatory number 13.**

INTERROGATORY NO. 14: As to any portion of the loss alleged and invoices of Plaintiff attached to the Complaint which you contend are not covered by Assignor's insurance policy issued by you, please set forth the specific amount which you contend are not covered, and for each such amount, all facts supporting your contention that no coverage exists for said amount.

**ANSWER: Pursuant to Fed. R. Civ. P. 33(d), Westchester has produced all reports and estimates from Leon Spears and Dan Hogan that are responsive to interrogatory number 14.**

INTERROGATORY NO. 15: As to any portion of the invoices and bills of Plaintiff attached to the Complaint which you contend are not reasonable in their amount, specifically identify that portion of the work performed, invoice or bill which you allege to be unreasonable and state all factual and legal basis which you allege support that contention.

**ANSWER: Pursuant to Fed. R. Civ. P. 33(d), Westchester has produced all reports and estimates from Leon Spears and Dan Hogan that are responsive to interrogatory number 15.**

INTERROGATORY NO. 16: Identify (defined above) any persons or companies not employed directly by your company who provided you with any services, analyses, outside adjusting, or otherwise rendered opinions to you in the adjusting of the Plaintiff's claim, please identify:

a.      The name of the individual who hired the third party on behalf of your company.
b.      The date and nature of the services provided by the third party.
c.      Each case in which the third party has been retained by you for any purpose during the past three years.
d.      The amount of money that the third party has been paid by you during the past three years.
e.      Please state the taxpayer identification numbers for both you and the third party.

**Westchester objects to subparts (c), (d) and (e) of interrogatory number 16 because plaintiff seeks to discover information that is not relevant to the subject**

matter of this action, is outside the scope of the action and has no relation to the litigation. A party wishing to utilize the discovery rules must show that the information desired to be disclosed is relevant to the proceeding. Further, Westchester objects to subparts (c), (d) and (e) of interrogatory number 16 because it seeks information that constitutes or contains trade secrets, competitively sensitive information, or material that is confidential, proprietary, or that is properly subject to a protective order. Subject to these objections, and without waiving these objections, Westchester responds to subparts (a) and (b) of interrogatory 16 as follows:

Sedgwick Claims Management Services, Inc. was retained on October 31, 2018, to investigate the insured's claim by Cynthia Vann. Loss Management Solutions was retained by Cynthia Vann in March 2019 to review the invoices submitted by plaintiff and to make inquires to plaintiff regarding the invoices.

INTERRROGATORY NO. 17: On what date did you anticipate litigation in the underlying insurance claim?

ANSWER: Westchester objects to interrogatory number 17 because it requests a legal conclusion.

This 20th day of December, 2019.

/s/ Richard Young
J. RICHARD YOUNG
Florida Bar No. 0563250
MOZLEY, FINLAYSON & LOGGINS
LLP
4767 New Broad Street
Orlando, Florida 32814
Tel: (407) 514-2765 Ext. 2317
Fax: (404) 250-9355
ryoung@mfllaw.com

-and-

WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted in USDC NDFL*
MICHELLE A. SHERMAN

- 8 -

Georgia Bar No. 835980
*Admitted in USDC NDFL*
MOZLEY, FINLAYSON & LOGGINS
LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

*Attorneys for Defendant Westchester*
*Surplus Lines Insurance Company*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ELITE MITIGATION SERVICES,    )
LLC a/a/o Greta Lawrence,     )
                              )
        Plaintiff,            )
                              )
v.                            )    Case No.: 5:19-cv-381-TKW-MJF
                              )
WESTCHESTER SURPLUS LINES     )
INSURANCE COMPANY,            )
                              )
        Defendant.            )

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing ***Westchester Surplus Lines Insurance Company's Unverified Responses to Plaintiff's Interrogatories*** using the Court's CM/ECF System, which will automatically send a copy of same to the following counsel of record:

Ali A. Kadir, Esq.
Benjamin W. Raslavich, Esq.
Kuhn Raslavich, P.A.
500 N. Maitland Avenue, Suite 111
Maitland, Florida 32751
ali@thekrfirm.com
ben@thekrfirm.com
*Attorney for Plaintiff Elite Mitigation Services LLC a/a/o Greta Lawrence*

This 20th day of December, 2019.

*/s/ Richard Young*
J. RICHARD YOUNG
Florida Bar No. 0563250